UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


| | | |
|---|---|---|
| XL SPECIALTY INSURANCE COMPANY, | : | |
| | : | |
| Plaintiff, | : | CIVIL NO. 303CV0698 (JBA) |
| V. | : | |
| | : | |
| HOUSING AUTHORITY OF THE CITY OF DANBURY, | : | |
| | : | |
| | : | October 16, 2003 |
| Defendant. | : | |


**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**


Defendant Housing Authority of the City of Danbury (the "Housing Authority")

submits this memorandum of law in support of its motion to dismiss Plaintiff XL

Specialty Insurance Company ("XL")'s Complaint for Declaratory Judgment dated April

16, 2003 (the "Complaint").


I.    **STATEMENT OF FACTS**

On February 13, 2002, the Housing Authority entered into a construction contract

(the "Contract") with VA Construction Company, LLC ("VA") for the renovation of the

High Ridge Gardens public housing complex at 23 Scuppo Road, Danbury, Connecticut

(the "Project").  See Affidavit of David Ghio, attached as Exhibit A to this motion, at ¶ 3.

VA agreed to perform the Contract for the guaranteed maximum price of $4,998,000.  Id.

The Contract required VA to provide performance and payment bonds to the Housing Authority to secure the performance of VA's obligations under the Contract.

XL executed and delivered performance and payment bonds to the Housing Authority on February 13, 2002, for which Housing Authority paid VA the sum of $55,000. Exhibit A at ¶ 4. The performance bond was written on a standard form promulgated by the American Institute of Architects (AIA Document A312), which requires the satisfaction of certain conditions by the owner-obligee before the surety's obligations mature under the bond. (A true and correct copy of the performance bond is attached as Exhibit B-1 to the Affidavit of Nathan Lampard, attached as Exhibit B to this motion.) In particular, Paragraph 3.3 requires the owner to agree to pay the balance of the contract price to the surety in accordance with the terms of the construction contract or to a contractor selected to perform the contract. Exhibit B-1. Stated simply, XL has no liability under the performance bond if the Housing Authority lacks the funds to pay the remaining contract balance.

VA defaulted on the Project in September 2002. Exhibit A at ¶ 5. On November 21, 2002, counsel for the Housing Authority sent a letter to XL's attorney stating that the Housing Authority would pay the balance of the contract price to XL in accordance with the terms of the Contract, without any credit for advance payments for work not actually performed or represented to have been performed by VA.[1] The Housing Authority

---

[1] A true and correct copy of the letter is attached as Exhibit B-2 to the affidavit of Nathan Lampard.

perfected its claim under the performance bond on December 11, 2003, when its counsel sent a letter to VA formally terminating VA's right to complete the Project.[2]  XL subsequently denied the claim on the grounds cited in the Complaint.

In or around February 2003, the Housing Authority notified the underwriter of the municipal bond issue that provided the funding for the Project, Wachovia Bank, National Association ("Wachovia"), of an event of default under the bond indenture.  Exhibit A at ¶ 6.  On May 14, 2003, Wachovia issued a notice of acceleration of payment to the bondholders, declaring the principal of all bonds outstanding and the interest accrued thereon to be due and payable on May 16, 2003.[3]  As a result of the declaration of default and the acceleration of principal and interest under the bond indenture, and in spite of diligent efforts to obtain replacement funding for the Project, the Housing Authority is presently unable to tender the remaining contract balance to XL pursuant to Paragraph 3.3 of the performance bond.  Exhibit A at ¶ 7.  In a letter sent to XL's attorney on October 16, 2003, counsel for the Housing Authority formally withdrew the Housing Authority's performance bond claim against XL.[4]

---

[2] A true and correct copy of the December 11, 2002 letter is attached as Exhibit B-3 to the affidavit of Nathan Lampard.

[3] A true and correct copy of the May 14, 2003 Notice of Acceleration is attached as Exhibit B-4 to the affidavit of Nathan Lampard.

[4] A true and correct copy of the October 16, 2003 letter is attached as Exhibit B-5 to the affidavit of Nathan Lampard.

## II.    LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12 (b)(1) must be granted if a plaintiff has failed to establish subject matter jurisdiction." Hartford Accident & Indemnity Co. v. Equitas Reinsurance, Ltd., 200 F. Supp. 2d 102, 106 (D. Conn. 2002) (citing Golden Hill Paugussett Tribe of Indians v. Wiecker, 839 F. Supp. 130, 136 (D. Conn. 1993)).  "Federal courts 'are empowered to hear only those cases that (1) are within the judicial power of the United States, as defined by the Constitution, and (2) that have been entrusted to them by a jurisdictional grant by Congress.'" Id. (quoting 13 C. Wright & A. Miller, Federal Practice and Procedure § 3522 (1984)).  "In deciding a motion to dismiss for lack of subject matter jurisdiction, the court construes the complaint broadly and liberally in conformity with the principle set out in Federal Rule 8(f), 'but argumentive inferences favorable to the pleader will not be drawn.'" Matos v. U.S. Dept. Housing and Urban Development, 995 F. Supp. 48, 49 (D. Conn. 1997) (quoting 5A C. Wright & A. Miller, Federal Practice and Procedure, § 1350, at 218-219).  "[U]nlike dismissals pursuant to Rule 12(b)(6), dismissals for lack of subject matter jurisdiction are not predicated on the merits of the claim." Id. (quoting Exchange Nat. Bank of Chicago v. Touche Ross & Co., 544 F.2d 1126, 1130-31 (2d. Cir. 1976), cert. denied, 469 U.S. 884 (1984)).  "Once subject matter jurisdiction is challenged, the burden of establishing it rests on the party asserting jurisdiction. Id. (citing Thompson v. Gaskill, 315 U.S. 442, 62 (1942).

4

## III.    ARGUMENT

**There Is No Justiciable Case or Controversy Between the Parties Because the Housing Authority Cannot Satisfy a Necessary Condition to XL's Obligations Under the Performance Bond.**

The Federal Declaratory Judgments Act, codified at 28 U.S.C. § 2201, authorizes declaratory judgments only in "cases of actual controversy." Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10, 17 (2d. Cir. 1993). Section 2201 provides no independent basis for subject matter jurisdiction, and incorporates the limitation on the jurisdiction of the federal courts under Article III, Section 2 of the Constitution to hear only actual cases and controversies. Niagara Mohawk Power Corporation v. Tonawanda Band of Seneca Indians, 94 F.3d 747, 754 (2d. Cir. 1996). "The Supreme Court has noted that the question we must ask is 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests**,** of *sufficient immediacy and reality* to warrant the issuance of a declaratory judgment." Olin, 5 F.3d at 17 (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)) (emphasis supplied by Olin court). "Whether a real and immediate controversy exists in a particular case is a matter of degree and must be determined on a case-by-case basis." Id. (quoting Kidder, Peabody & Co. v. Maxus Energy Corp., 925 F.2d 556, 562 (2d. Cir.), cert. denied, 111 S. Ct. 2829 (1991)).

In this case, there is no controversy of "sufficient immediacy and reality" that would confer subject matter jurisdiction upon this Court under 28 U.S.C. § 2201. As

explained above, the Housing Authority has withdrawn its performance bond claim

against XL because it lacks necessary funding to proceed with the completion of the

Project. Indeed, payment by the owner of the remaining contract balance is a necessary

condition to the surety's obligation under the performance bond. See Exhibit B-1 at

Paragraphs 3.3 and 12.4.

It is entirely speculative whether the Housing Authority will ever secure adequate

funding to complete the Project. Even prior to Wachovia's decision to declare a default

under the bond indenture, the Housing Authority needed to obtain approximately $1.5

million in additional construction funds to complete the Project in accordance with the

terms of the Contract. Exhibit A at ¶ 8. The U.S. Department of Housing and Urban

Development ("HUD"), which has traditionally provided the bulk of the Housing

Authority's construction funding, has indicated to the Housing Authority that it does not

have any plans to fund the completion of the Project. Exhibit A at ¶ 9. In view of the

Project's dim funding prospects, principles of judicial economy counsel against the

issuance of a declaratory judgment.

As a final consideration, under Section 38a-290 of the Connecticut General

Statutes, the Housing Authority has three (3) years from the date of VA's default to

institute a suit under the performance bond. The Court should permit the Housing

Authority the opportunity to pursue replacement funding for the Project during the

remaining term of the statute of limitation.

## IV.    CONCLUSION

For all the foregoing reasons, the Court should grant the motion to dismiss.

DEFENDANT
**HOUSING AUTHORITY OF THE
   CITY OF DANBURY**


By_____
   Nathan C. Lampard
   Fed. Bar. No. 24977
   Robinson & Cole LLP
   280 Trumbull Street
   Hartford, CT 06103-3597
   Tel. No.: (860) 275-8200
   Fax No.: (860) 275-8299
   E-mail: nlampard@rc.com

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed, postage prepaid, to

Dennis C. Cavanaugh, Esq., of Halloran & Sage LLP, 225 Asylum St., Hartford, CT

06103-4303on this 16th day of October, 2003.

_____

Nathan C. Lampard