E Xh B
B 1
B 2
B 3

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

XL SPECIALTY INSURANCE
COMPANY,

      Plaintiff,

V.

                :   CIVIL NO. 303CV0698 (JBA)

HOUSING AUTHORITY OF THE CITY
OF DANBURY,

                :   October 16, 2003

      Defendant.

I, **NATHAN C. LAMPARD**, being duly sworn, do hereby depose and say as follows:

1.     I am over the age of 18 years, and I understand the meaning and obligation of an oath.

2.     I am an attorney in the Hartford office of Robison & Cole LLP, counsel for the defendant Housing Authority of the City of Danbury (the "Housing Authority"), and the matters set forth herein are based upon my personal knowledge.

3.     Attached as <u>Exhibit B-1</u> to this affidavit is a true and correct copy of a performance bond issued in favor of the Housing Authority by XL Specialty Insurance Company on February 13, 2002 for the renovation of the High Ridge Gardens public housing complex in Danbury, Connecticut.

4.     Attached as <u>Exhibit B-2</u> to this affidavit is a true and correct copy of a letter dated November 20, 2002 from the affiant to Attorney Dennis Cavanaugh.

5.      Attached as <u>Exhibit B-3</u> to this affidavit is a true and correct copy of a letter dated December 11, 2002 from the affiant to Attorney Dennis Cavanaugh and a true and correct copy of a letter dated December 11, 2002 from the affiant to VA Construction Company, LLC.

6.      Attached as <u>Exhibit B-4</u> to this affidavit is a true and correct copy of a Notice of Acceleration of Payment issued by Wachovia Bank, National Association on May 14, 2003.

7.      Attached as Exhibit B-5 to this affidavit is a true and correct copy of a letter dated October 16, 2002 from the affiant to Attorney Dennis Cavanaugh.

_____
Nathan C. Lampard

Subscribed and sworn to before
me this 16th day of October, 2003

_____
Commissioner of the Superior Court
Notary-Public
My Commission Expires:

2

# THE AMERICAN INSTITUTE OF ARCHITECTS



*AIA Document A312*

# Performance Bond

### Bond@1047714

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

**CONTRACTOR (Name and Address):**

V.A. Construction Company, LLC
P.O. Box 1124
Waterbury, CT   06721

**OWNER (Name and Address):**

Housing Authority City of Danbury
2 Mill Ridge Road
Danbury, CT  06813-0086

**SURETY (Name and Principal Place of Business):**

XL Specialty Insurance Company
1450 East American Lane
Schaumburg, IL., 60173

**CONSTRUCTION CONTRACT**

Date:

Amount: **Four million nine hundred ninety eight thousand dollars and 00/100**
                                                    **$4,998,000.00**
Description (Name and Location):

Renovations – High Ridge Gardens

**BOND**

Date (Not earlier than Construction Contract Date):    **February 13, 2002**

Amount: **Four million nine hundred ninety eight thousand dollars and 00/100**

Modifications to this Bond:    ☐ None    **$4, 998,000.00**    ☐ See Page 3

**CONTRACTOR AS PRINCIPAL**

Company:                        (Corporate Seal)

V.A. Construction Company, LLC

Signature:
Name and Title:

(Any additional signatures appear on page 3)

**SURETY** XL Specialty Insurance Company

Company:                        (Corporate Seal)

Signature:
Name and Title:
Christoher J. Como
Attorney-In-Fact

*(FOR INFORMATION ONLY-Name, Address and Telephone)*

**AGENT or BROKER:**

Como & Nicholson, Inc.
720 Clinton Ave.
Bridgeport, CT. 06604
203-333-1500

**OWNER'S REPRESENTATIVE** (Architect, Engineer or other party):

AIA DOCUMENT A312 • PERFORMANCE BOND AND PAYMENT BOND • DECEMBER 1984 ED. • AIA ®
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W., WASHINGTON, D.C. 20006
THIRD PRINTING • MARCH 1987                                                      A312-1984    1

1  The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

2  If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except to participate in conferences as provided in Sub-paragraph 3.1.

3  If there is no Owner Default, the Surety's obligation under this Bond shall arise after:

3.1  The Owner has notified the Contractor and the Surety at its address described in Paragraph 10 below that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction contract. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default; and

3.2  The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the contract. Such Contractor Default shall not be declared earlier than twenty days after the Contractor and the surety have received notice as provided in Subparagraph 3.1; and

3.3  The Owner has agreed to pay the balance of the Contract Price to the Surety in accordance with the terms of the Con-struction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner.

4  When the Owner has satisfied the conditions of Paragraph 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

4.1  Arrange for the Contractor, with the consent of the Owner, to perform and complete the Construction Contract; or

4.2  Undertake to perform and complete the Construction Contract itself, through its agents or through independent contractors; or

4.3  Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and the contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Paragraph 6 in excess of the Balance of the Contract Price incurred by the Owner resulting from the Contractor's default; or

4.4  Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

.1  After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, tender payment therefor to the Owner; or
.2  Deny liability in whole or in part and notify the Owner citing reasons therefor.

5  If the Surety does not proceed as provided in Paragraph 4 with reasonable promptness, the Surety shall be deemed to be in default on this Bond fifteen days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Subparagraph 4.4, and the Owner refuses the payment tendered or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

6  After the Owner has terminated the Contractor's right to complete the Construction Contract , and if the Surety elects to act under Subparagraph 4.1, 4.2, or 4.3 above, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. To the limit of the amount of this Bond, but subject to commitment by the Owner of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract, the surety is obligated without duplication for:

6.1  The responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;

6.2  Additional legal, design professional and delay costs resulting from Contractor's Default, and resulting from the actions or failure to act of the Surety under paragraph 4; and

6.3  Liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

7  The surety shall not be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this bond to any person or entity other than the Owner or its heirs, executors, administrators or successors.

8  The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

9  Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

10  Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page.

11  When this bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

AIA DOCUMENT A312 • PERFORMANCE BOND AND PAYMENT BOND • DECEMBER 1984 ED. • AIA ®
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W., WASHINGTON, D.C. 20006
THIRD PRINTING • MARCH 1987

A312-1984  2

## 12 DEFINITIONS

12.1 Balance of the Contract Price: The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made, including allowance to the Contractor of any amounts received or to be received by the Owner in settlement of insurance or other claims for damages to which the Contractor is entitled, reduced by all valid and proper payments made to or on behalf of the Contractor under the Construction Contract.

12.2 Construction Contract: The agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

12.3 Contractor Default: Failure of the Contractor, which has neither been remedied nor waived, to perform or otherwise to comply with the terms of the Construction Contract.

12.4 Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

MODIFICATIONS TO THIS BOND ARE AS FOLLOWS:

(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)

CONTRACTOR AS PRINCIPAL
Company:
                                        (Corporate Seal)

Signature:
Name and Title:
Address:

SURETY
Company:
                                        (Corporate Seal)

Signature:
Name and Title:
Address:

# THE AMERICAN INSTITUTE OF ARCHITECTS



### AIA Document A312

# Payment Bond

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

CONTRACTOR (Name and Address):
V.A. Construction Company, LLC
P.O. Box 1124
Waterbury, CT   06721

SURETY (Name and Principal Place of Business):
XL Specialty Insurance Company
1450 East American Lane
Schaumburg, IL., 60173

OWNER (Name and Address):
Housing Authority City of Danbury
2 Mill Ridge Road
Danbury, CT   06813-0086

CONSTRUCTION CONTRACT
Date:

Amount: Four million nine hundred ninety eight thousand dollars and 00/100
Description (Name and Location):
Renovations - High Ridge Gardens

BOND
Date (Not earlier than Construction Contract Date): February 13, 2002
Amount: Four million nine hundred ninety eight thousand dollars and 00/100
Modifications to this Bond:

☐ None                ☐ See Page 6

CONTRACTOR AS PRINCIPAL
Company:                          (Corporate Seal)
V.A. Construction Company, LLC

Signature:
Name and Title:

(Any additional signatures appear on page 6)

SURETY XL Specialty Insurance Company
Company:                          (Corporate Seal)

Signature:
Name and Title:
Christoher J. Como
Attorney-In-Fact

(FOR INFORMATION ONLY-Name, Address and Telephone)
AGENT or BROKER:
Como & Nicholson, Inc.
720 Clinton Ave.
Bridgeport, CT. 06604
203-333-1500

OWNER'S REPRESENTATIVE (Architect, Engineer or other party):

AIA DOCUMENT A312 • PERFORMANCE BOND AND PAYMENT BOND • DECEMBER 1984 ED. • AIA ®
THE AMERICAN INSTITUTE OF ARCHITECTS. 1735 NEW YORK AVE., N.W., WASHINGTON, D.C. 20006
THIRD PRINTING • MARCH 1987

1 The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference.

2 With respect to the Owner, this obligation shall be null and void if the Contractor:

2.1 Promptly makes payment, directly or indirectly, for all sums due Claimants, and

2.2 Defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity whose claim, demand, lien or suit is for the payment for labor, materials or equipment furnished for the use in the performance of the Construction Contract, provided the Owner has promptly notified the Contractor and the Surety (at the address described in Paragraph 12) of any claims, demands, liens or suits and tendered defense of such claims,demands, liens or suits to the Contractor and the Surety, and provided there is no Owner Default.

3 With respect to Claimants, this obligation shall be null and void if the Contractor promptly makes payment, directly or indirectly, for all sums due.

4 The Surety shall have no obligation to Claimants under this bond until:
4.1 Claimants who are employed by or have a direct contract with the Contractor have given notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and, with substantial accuracy, the amount of the claim.

4.2 Claimants who do not have a direct contract with the Contractor:

.1 Have furnished written notice to the Contractor and sent a copy, or notice thereof, to the Owner, within 90 days after having last performed labor or last furnished materials or equipment included in the claim stating, with substantial accuracy, the amount of the claim and the name of the party to whom the materials were furnished or supplied or for whom the labor was done or performed; and

.2 Have either received a rejection in whole or in part from the Contractor, or not received within 30 days of furnishing the above notice any communication from the Contractor by which the Contractor has indicated the claim will be paid directly or indirectly; and

.3 Not having been paid within the above 30 days, have sent a written notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and enclosing a copy of the previous written notice furnished to the Contractor.

5 If a notice required by Paragraph 4 is given by the Owner to the Contractor or to the Surety, that is sufficient compliance.

6 When the Claimant has satisfied the conditions of Paragraph 4, the Surety shall promptly and at the Surety's expense take the following actions:

6.1 Send an answer to the Claimant, with a copy to the Owner, within 45 days after receipt of the claim, stating the amounts that

are undisputed and the basis for challenging any amounts that are disputed.
6.2 Pay or arrange for payment of any undisputed amounts.

7 The Surety's total obligation shall not exceed the amount of this Bond, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

8 Amounts owed by the Owner to the Contractor under the Construction Contract shall be used for the performance of the Construction Contract and to satisfy claims, if any, under any Construction Performance Bond. By the Contractor furnishing and the Owner accepting this Bond, they agree that all funds earned by the Contractor in the performance of the Construction Contract are dedicated to satisfy obligations of the Contractor and the Surety under this Bond, subject to the Owner's priority to use the funds for the completion of the work.

9 The Surety shall not be liable to the Owner, Claimants or others for obligations of the Contractor that are unrelated to the Construction Contract. The Owner shall not be liable for payment of any costs or expenses of any Claimant under this Bond, and shall have under this Bond no obligations to make payments to, give notices on behalf of, or otherwise have obligations to Claimants under this Bond.

10 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

11 No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the location in which the work or part of the work is located or after the expiration of one year from the date (1) on which the Claimant gave the notice required by Subparagraph 4.1 or Clause 4.2.3, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

12 Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page. Actual receipt of notice by Surety, the Owner or the Contractor, however accomplished, shall be sufficient compliance as of the date received at the address shown on the signature page.

13 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

14 Upon request by any person or entity appearing to be a potential beneficiary of this Bond, the Contractor shall promptly furnish a copy of this Bond or shall permit a copy to be made.

15 DEFINITIONS

15.1 Claimant: an individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Contract.

AIA DOCUMENT A312 • PERFORMANCE BOND AND PAYMENT BOND • DECEMBER 1984 ED. • AIA ®
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W., WASHINGTON, D.C. 20006
THIRD PRINTING • MARCH 1987

A312-1984    5

The intent of this Bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract, architectural and engineering services required for performance of the work of the Contractor and the Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

**15.2** Construction Contract: The agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

**15.3** Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

## MODIFICATIONS TO THIS BOND ARE AS FOLLOWS:

(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)

CONTRACTOR AS PRINCIPAL
Company:                                    (Corporate Seal)

Signature:
Name and Title:
Address:

SURETY
Company:                                    (Corporate Seal)

Signature:
Name and Title:
Address:

AIA DOCUMENT A312 • PERFORMANCE BOND AND PAYMENT BOND • DECEMBER 1984 ED. • AIA ®
THE AMERICAN INSTITUTE OF ARCHITECTS. 1735 NEW YORK AVE.. N.W.. WASHINGTON. D.C. 20006
THIRD PRINTING • MARCH 1937

A312-1984    6



**XL SPECIALTY**
AN XL CAPITAL COMPANY

**LIMITED POWER OF ATTORNEY**

KNOW ALL MEN BY THESE PRESENTS: That the XL SPECIALTY INSURANCE COMPANY, a corporation organized and existing by virtue of the laws of the State of Illinois ("Company" or "Corporation"), does hereby nominate, constitute and appoint; *Christopher J. Como, Vincent J. Como and Patricia M. Como as employees of Como & Nicholson, Inc.,* its true and lawful Attorney(s)-in-fact to make, execute, attest, seal and deliver for and on its behalf, as surety, and as its act and deed; where required, any and all bonds, undertakings, recognizances and written obligations in the nature thereof, the penal sum of no one of which is in any event to exceed **$5,000,000.00** as required by Surety Obligees.

Such bonds and undertakings, when duly executed by the aforesaid Attorney(s)-in-fact shall be binding upon the said Company as fully and to the same extent as if such bonds and undertakings were signed by the President and Secretary of the Company and sealed with its corporate seal.

This Power of Attorney is granted and is signed by facsimile under and by the authority of the following Resolution adopted by the Board of Directors of the Company on the 5th day of December, 1988:

"RESOLVED, That the President, or any Vice President of the Company or any person designated by any one of them is hereby authorized to execute Powers of Attorney qualifying the attorney named in the given Power of Attorney to execute in behalf of the Company, bonds, undertakings and all contracts of suretyship and that any Secretary or any Assistant Secretary of the Company be, and that each or any of them hereby is authorized to attest the execution of any such Power of Attorney, and to attach thereto the Seal of the Company.

FURTHER RESOLVED, That the signature of such officers and the Seal of the Company may be affixed to any such Power of Attorney or to any certificate relating thereto by facsimile, and any such Power of Attorney or certificate bearing such facsimile signatures or facsimile seal shall be thereafter valid and binding upon the Company with respect to any bond, undertaking or contract of suretyship to which it is attached."

Bonds executed under this Power of Attorney may be executed under facsimile signature and seal pursuant to the following Resolution adopted by the Board of Directors of the Company on August 7, 1997.

"RESOLVED, That the signature of Stanley A. Galanski, as President of this Corporation, and the seal of this Corporation may be affixed or printed on any and all bonds, undertakings, recognizances, or other written obligations thereof, on any revocation of any Power of Attorney, or on any certificate relating thereto, by facsimile, and any Power of Attorney, any revocation of any Power of Attorney, bonds, undertakings, recognizances, certificate or other written obligation, bearing such facsimile signature or facsimile seal shall be valid and binding upon the Corporation."

IN WITNESS WHEREOF, the XL SPECIALTY INSURANCE COMPANY has caused its corporate seal to be hereunto affixed, and these presents to be signed by its duly authorized officers this 3rd day of January, 2000.

XL SPECIALTY INSURANCE COMPANY

BY: _____
PRESIDENT

Attest: _____
SECRETARY

STATE OF ILLINOIS
COUNTY OF COOK          ss.

On this 3rd day of January, 2000, before me personally came Stanley A. Galanski to me known, who, being duly sworn, did depose and say: that he is President of the Corporation described in and which executed the above instrument; that he knows the seal of said Corporation; that the seal affixed to the aforesaid instrument is such corporate seal and was affixed thereto by order and authority of the Board of Directors of said Company; and that he executed the said instrument by like order and authority:

OFFICIAL SEAL
JOETTE R. CASTRO
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES: 12/13/03

_____
NOTARY PUBLIC

STATE OF ILLINOIS
COUNTY OF COOK          ss.

I, Ben M. Llaneta, Secretary of the XL SPECIALTY INSURANCE COMPANY a corporation of the State of Illinois, do hereby certify that the above and foregoing is a full, true and correct copy of Power of Attorney issued by said Company, and that I have compared same with the original and that it is a correct transcript therefrom and of the whole of the original and that the said Power of Attorney is still in full force and effect and has not been revoked.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of said Company, at the City of Schaumburg, this 13th day of February 2002

_____
SECRETARY

# ROBINSON & COLE LLP

NATHAN C. LAMPARD

280 Trumbull Street
Hartford, CT 06103-3597
Main (860) 275-8200
Fax (860) 275-8299
nlampard@rc.com
Direct (860) 275-8373

Also admitted in Hawaii

*Via Facsimile and U.S. Mail*

November 20, 2002

Dennis C. Cavanaugh, Esq.
Halloran & Sage LLP
One Goodwin Square
225 Asylum Street
Hartford, CT  06103

| Re: | Contractor | : | VA Construction Company, LLC |
|-----|-----------|---|------------------------------|
|     | Owner | : | Housing Authority of the City of Danbury |
|     | Surety | : | XL Specialty Insurance Company |
|     | Bond No. | : | 1047714 |
|     | Project | : | Renovation of High Ridge Gardens |

Dear Dennis:

As you are aware, the Housing Authority of the City of Danbury (the "Authority") has retained this law firm to serve as co-counsel with the law firm of Riefberg, Smart, Donohue & Nejame, P.C. in prosecuting a claim under the performance bond issued by your client, XL Specialty Insurance Company ("XL"), for the $4,998,000 contract (the "Contract") entered into by VA Construction Company, LLC ("VA") for the renovation of the High Ridge Gardens housing project in Danbury, Connecticut (the "Project"). We have had the opportunity to review your letter of November 8, 2002 to Christopher Donohue, Esq., in which you state that XL "does not presently anticipate arranging for the completion of VA's work." Obviously, the Authority disputes both your characterization of the events leading up to VA's default under the Contract and your conclusion that XL is discharged from liability under the performance bond.

The Authority takes particular exception to the contention that it fraudulently induced XL to issue performance and payment bonds in connection with the Project. At the time the Contract was executed and the bonds were delivered by XL, the Authority had a reasonable good faith belief that VA possessed the necessary technical, operational and financial resources to complete the Project on time and within budget.



*Law Offices*

BOSTON

HARTFORD

NEW LONDON

STAMFORD

GREENWICH

NEW YORK

*www.rc.com*    HART1-1062258-1

# ROBINSON & COLE LLP

November 20, 2002
Page 2

The Authority had recently used VA as a replacement contractor on a similar renovation project in Danbury. Prior to negotiating the Contract with VA, and upon a recommendation provided by the Project architect, the Authority hired an independent engineering and construction management firm, RECON International Inc. ("Recon"), to estimate the total cost of construction for the work outlined in the Contract Documents. On January 24, 2002, Recon delivered a second draft of its estimate showing a total projected cost of $4,828,339, revised upward from an earlier estimate of $4,604,509. The revised figure included direct construction costs of $3,939,532, together with such indirect items as a $629,783 (15%) allowance for the contractor's overhead and profit, a contingency for changes to the drawings amounting to $98,488, a $40,380 allowance for permits, and an allowance for contract bonds and builder's risk insurance in the amount of $120,156. Possessing this information, the Authority reasonably believed that the Project could be completed for under $5,000,000, especially by a contractor who was familiar with the Authority's construction procedures and controls.

The Authority certainly never understood that "there was a substantial likelihood that VA would not be able to complete the Project, and that [XL's] performance bond most likely would be brought into play," nor did the Authority coerce VA into signing the Contract. As explained above, the estimated cost of completing the work, including a generous 18% allowance for the contractor's overhead and profit and other indirect costs, was almost $170,000 *less* than the Contract Price ultimately negotiated by the parties. At a minimum, the Authority had a good faith belief that the funds budgeted for the Project were more than sufficient to complete the work. Moreover, subsequent events revealed that VA was experiencing cash flow problems as early as the first quarter of this year, for reasons totally unrelated to the profitability of the Contract.

Thus, the allegation of fraudulent inducement is reduced to an inquiry as to whether the Authority knew with substantial certainty that, at the time of contract formation, VA either lacked the expertise to complete the Project or was in such dire financial straits at the time the Contract was executed that there was a substantial likelihood of contractor default prior to completion of the Project. Two points are relevant here. First, VA never gave any indication to the Authority that it could not perform the Contract, nor did the Authority learn of VA's financial difficulties until after the Contract was executed. Second, and perhaps most significant, the Authority relied upon VA's bonding company for assurance that VA could perform the Contract. Indeed, the Authority paid a significant premium to XL for prequalification services implicit in the delivery of performance and payment bonds. At the very least, XL had more complete information concerning VA's operations and financial condition and



# ROBINSON & COLE LLP

November 20, 2002
Page 3

was in a better position than the Authority to determine whether VA could perform the Contract.

With respect to the issue of the $1,000,000 "loan" to VA, the fact that the Authority may have advanced contract funds to VA for work yet to be performed on the Project does not provide a complete defense to XL for liability under the performance bond; rather, XL is discharged from liability only to the extent it was prejudiced by any such premature payments. The Authority is currently conducting an internal accounting of all funds disbursed to VA in connection with the Project. In the interim, please be advised that the Authority is prepared to pay the balance of the Contract Price to XL in accordance with the terms of the Contract, without any credit for premature payments made to VA for work not actually performed or represented by VA to have been performed on the Project.

We hope that XL will reconsider its position in this matter and look forward to working with you in finishing the Project in a timely manner.

Sincerely,

Nathan C. Lampard

cc:    Bernard Fiztpatrick
       David R. Ghio
       Christopher Hug, Esq.



# ROBINSON & COLE LLP

NATHAN C. LAMPARD

280 Trumbull Street
Hartford, CT 06103-3597
Main (860) 275-8200
Fax (860) 275-8299
nlampard@rc.com
Direct (860) 275-8373

Also admitted in Hawaii

*Via Facsimile and U.S. Mail*

December 11, 2002

Dennis C. Cavanaugh, Esq.
Halloran & Sage LLP
One Goodwin Square
225 Asylum Street
Hartford, CT  06103

| Re: | Contractor | : | **VA Construction Company, LLC** |
|-----|-----------|---|----------------------------------|
|     | Owner      | : | **Housing Authority of the City of Danbury** |
|     | Surety     | : | **XL Specialty Insurance Company.** |
|     | Bond No.   | : | **1047714** |
|     | Project    | : | **Renovation of High Ridge Gardens** |

Dear Dennis:

Please be advised that the Housing Authority of the City of Danbury (the "Authority"), in a letter sent today to VA Construction Company, LLC ("VA"), and in accordance with Subparagraph 3.2 of the above referenced performance bond, formally declared a contractor default under the High Ridge Gardens contract (the "Contract") and terminated VA's right to complete the Contract. The Authority was compelled to take this action in view of the glaring inadequacies of the most recent workout proposal submitted by your client, XL Specialty Insurance Company ("XL"), in which XL refused to pay any future payment bond claims and offered to pay only up to $250,000 in VA's overhead in completing the work covered by the Contract.

For reasons not apparent to the Authority, XL maintains that it will not cover direct construction costs in excess of the remaining balance of the contract price, even though the Authority has expressly disclaimed any credit for premature payments made to VA for work not actually performed or represented by VA to have been performed under the Contract. The Authority simply cannot allow XL to evade contractual obligations XL freely assumed when it issued performance and payment bonds for the above referenced project. While the Authority remains hopeful that the



*Law Offices*

BOSTON

HARTFORD

NEW LONDON

STAMFORD

GREENWICH

NEW YORK

*www.rc.com*      HART1-1066446-1

# ROBINSON & COLE LLP

December 11, 2002
Page 2

parties may yet reach an agreement to resolve the present impasse, the Authority must proceed in perfecting its rights under the performance bond.

In my letter to you dated November 20, 2002, I advised you that the Authority had agreed to pay the balance of the contract price to XL in accordance with the terms of the Contract or to a contractor selected to perform the Contract. With the termination of VA's right to complete the Contract, the Authority has satisfied all of the conditions of Paragraph 3 of the performance bond, and thus demands that XL promptly elect its course of action under Paragraph 4 of the performance bond.

There has been no work performed on the project site in the last three months. We note that it has been over two months since VA formally notified XL that VA was unable to complete the Contract. In a letter to the Authority dated October 2, 2002, VA declared itself to be in "voluntary default" of the Contract and relinquished in favor of XL all of its right, title and interest to all contract funds, claims and retainage. We note further that XL has already conducted an extensive investigation of the circumstances attendant to VA's default, which included unrestricted access to all of the project architect's files and records. Under the circumstances, we believe that "reasonable promptness" under Paragraph 5 of the performance bond requires XL to notify the Authority of its course of action within ten (10) days of receiving this letter.

If you have any questions or concerns, please do not hesitate to contact me.

Sincerely,

Nathan C. Lampard

cc:    Bernard Fiztpatrick
       David R. Ghio
       Christopher Hug, Esq.
       Christopher T. Donohue, Esq.



# ROBINSON & COLE LLP

NATHAN C. LAMPARD

280 Trumbull Street
Hartford, CT 06103-3597
Main (860) 275-8200
Fax (860) 275-8299
nlampard@rc.com
Direct (860) 275-8373

Also admitted in Hawaii

*Via Facsimile and U.S. Mail*

December 11, 2002

Vernon J.D. Austin, Sr.
VA Construction Company, LLC
P.O. Box 1124
Waterbury, CT  06721

Re:    **Contract for Renovation of High Ridge Gardens, Danbury, CT**

Dear Mr. Austin:

This law firm represents the Housing Authority of the City of Danbury (the
"Authority") in connection with the prosecution of a claim against the performance
bond issued by XL Specialty Insurance Company ("XL") for the above referenced
contract (the "Contract").

The purpose of this letter to provide formal notice to VA Construction Company,
LLC ("VA") that the Authority deems VA to be in default under the Contract and
hereby terminates VA's right to complete the Contract.  The Authority is compelled to
take this action in order to perfect its rights under the XL performance bond.  We
note, however, that the termination of VA's right to complete the Contract does not
necessarily preclude the Authority from entertaining workout proposals submitted by
XL in which VA would be permitted to complete the Contract under XL's
supervision.

If you have any questions or concerns, please do not hesitate to contact me.

Sincerely,

Nathan C. Lampard

cc:    Bernard Fiztpatrick
       David R. Ghio
       Christopher Hug, Esq.
       Christopher T. Donohue, Esq.

Law Offices

BOSTON

HARTFORD

NEW LONDON

STAMFORD

GREENWICH

NEW YORK

www.rc.com

HART1-1066560-1

# ROBINSON & COLE LLP

NATHAN C. LAMPARD

280 Trumbull Street
Hartford, CT 06103-3597
Main (860) 275-8200
Fax (860) 275-8299
nlampard@rc.com
Direct (860) 275-8373

Also admitted in Hawaii

*Via Facsimile and U.S. Mail*

December 11, 2002

Dennis C. Cavanaugh, Esq.
Halloran & Sage LLP
One Goodwin Square
225 Asylum Street
Hartford, CT 06103

| Re: | Contractor | : | **VA Construction Company, LLC** |
| --- | --- | --- | --- |
| | Owner | : | **Housing Authority of the City of Danbury** |
| | Surety | : | **XL Specialty Insurance Company** |
| | Bond No. | : | **1047714** |
| | Project | : | **Renovation of High Ridge Gardens** |

Dear Dennis:

Please be advised that the Housing Authority of the City of Danbury (the "Authority"), in a letter sent today to VA Construction Company, LLC ("VA"), and in accordance with Subparagraph 3.2 of the above referenced performance bond, formally declared a contractor default under the High Ridge Gardens contract (the "Contract") and terminated VA's right to complete the Contract. The Authority was compelled to take this action in view of the glaring inadequacies of the most recent workout proposal submitted by your client, XL Specialty Insurance Company ("XL"), in which XL refused to pay any future payment bond claims and offered to pay only up to $250,000 in VA's overhead in completing the work covered by the Contract.

For reasons not apparent to the Authority, XL maintains that it will not cover direct construction costs in excess of the remaining balance of the contract price, even though the Authority has expressly disclaimed any credit for premature payments made to VA for work not actually performed or represented by VA to have been performed under the Contract. The Authority simply cannot allow XL to evade contractual obligations XL freely assumed when it issued performance and payment bonds for the above referenced project. While the Authority remains hopeful that the



*Law Offices*

BOSTON

HARTFORD

NEW LONDON

STAMFORD

GREENWICH

NEW YORK

*www.rc.com*      HART1-1066446-1

# ROBINSON & COLE LLP

December 11, 2002
Page 2

parties may yet reach an agreement to resolve the present impasse, the Authority must proceed in perfecting its rights under the performance bond.

In my letter to you dated November 20, 2002, I advised you that the Authority had agreed to pay the balance of the contract price to XL in accordance with the terms of the Contract or to a contractor selected to perform the Contract. With the termination of VA's right to complete the Contract, the Authority has satisfied all of the conditions of Paragraph 3 of the performance bond, and thus demands that XL promptly elect its course of action under Paragraph 4 of the performance bond.

There has been no work performed on the project site in the last three months. We note that it has been over two months since VA formally notified XL that VA was unable to complete the Contract. In a letter to the Authority dated October 2, 2002, VA declared itself to be in "voluntary default" of the Contract and relinquished in favor of XL all of its right, title and interest to all contract funds, claims and retainage. We note further that XL has already conducted an extensive investigation of the circumstances attendant to VA's default, which included unrestricted access to all of the project architect's files and records. Under the circumstances, we believe that "reasonable promptness" under Paragraph 5 of the performance bond requires XL to notify the Authority of its course of action within ten (10) days of receiving this letter.

If you have any questions or concerns, please do not hesitate to contact me.

Sincerely,

Nathan C. Lampard

cc:    Bernard Fiztpatrick
       David R. Ghio
       Christopher Hug, Esq.
       Christopher T. Donohue, Esq.

